502 So.2d 409 (1986)
Nathaniel JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 66671.
Supreme Court of Florida.
December 24, 1986.
Rehearing Denied March 9, 1987.
Arthur S. Corrales, Tampa, for appellant.
*410 Jim Smith, Atty. Gen., and Peggy A. Quince, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Justice.
Appellant, Nathaniel Jackson, appeals his conviction of armed robbery and first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The evidence adduced at the trial below revealed that appellant and his brother, Clinton Jackson, spent the day of January 17, 1984 riding around St. Petersburg in a borrowed Toyota pickup truck. At some point during the day Clinton informed appellant that he knew of a hardware store they could rob. The two drove around the hardware store several times waiting for the owner to be alone. Around five o'clock in the afternoon, the two parked the truck in an alley, left the engine running, and entered the business. Appellant pretended to buy a box of nails and when the owner, Herbert Phillibert, opened the cash register, Clinton produced a pistol and pointed it at Phillibert's head. Appellant reached around the cash register and began removing the money when Mr. Phillibert grabbed appellant, apparently in an attempt to retrieve some of his money. At this point Clinton leaned over the counter and fired a single, fatal shot into Mr. Phillibert. Approximately ten minutes later two customers entered the store and found Mr. Phillibert lying face-down behind the counter in a semi-conscious state clutching a five dollar bill in his hand. Shortly thereafter emergency medical personnel arrived and found Mr. Phillibert dead.
The police focused on appellant and his brother as suspects in this case by locating the owner of the pickup truck who had loaned the vehicle to either Clinton or Clinton and Nathaniel's mother, and who had seen Clinton Jackson driving the vehicle on the day of the murder. The police also discovered appellant's fingerprints in the vehicle and on the cash register at the scene of the murder. After the police comparison matched the crime scene and vehicle fingerprint evidence with appellant's fingerprints, an arrest warrant was issued for both brothers. Clinton was arrested in Pinellas County approximately eight hours after the murder. Appellant absconded to Valdosta, Georgia and was arrested by the Valdosta police. Two homicide detectives from the St. Petersburg police department traveled to Valdosta. Appellant received his Miranda[1] rights and informed the detectives that he wanted to talk with them. Appellant informed the detectives of the facts of the robbery and shooting including the fact that appellant knew his brother Clinton was carrying a firearm when the two entered the hardware store. Appellant drew a diagram of what had occurred at the store and also wrote and signed a statement: "Me and Clinton robbed the man and Clinton shot the man." The conversation between appellant and the detectives was testified to by the detectives and the diagram and written statement were admitted into evidence and displayed to the jury.
Before this Court, appellant does not challenge his conviction for armed robbery and first-degree murder. Our independent review of the record reveals that appellant received a fair trial and that the jury's verdict of guilty for both crimes is amply supported by the evidence. Accordingly, we affirm the convictions.
Following the penalty phase proceedings, the jury unanimously recommended that appellant be sentenced to death. The trial court followed the jury's recommendation and in its sentencing order, found four aggravating circumstances: Previous conviction of a felony involving the use or threat of violence to the person;[2] the murder was committed while the defendant was engaged, or was an accomplice in the commission of an attempt to commit a robbery;[3] the murder was committed for the *411 purpose of avoiding or preventing a lawful arrest or affecting an escape from custody;[4] and, the crime was especially heinous, atrocious or cruel.[5] The trial court found nothing in mitigation.
Appellant's initial allegation of error concerns the trial court's instructions to the jury at the conclusion of the penalty phase. This claim is meritless. Not only did appellant fail to object to the instructions given, but our review of the record clearly shows that the standard instructions given accurately informed the jury of the law. There was no error. See Kennedy v. State, 455 So.2d 351 (Fla. 1984), cert. denied, 469 U.S. 1197, 105 S.Ct. 981, 83 L.Ed.2d 983 (1985).
Appellant challenges three of the four aggravating factors found by the trial court. Appellant argues that the first factor in aggravation, previous conviction of a violent felony, was improperly found by the trial court. Appellant claims this was so because the court relied on a change of plea document evidencing appellant's change of plea from not guilty to nolo contendere for the crime of attempted armed robbery. This document showed that the court had accepted appellant's change of plea and had adjudicated him guilty for this crime. Appellant's counsel at trial conceded that since there was no formal judgment or sentence at that point, the change of plea document was admissible as it evidenced the adjudication of guilt. We agree. See McCrae v. State, 395 So.2d 1145, 1154 (Fla. 1980) (once a plea has been accepted by the court, it is the conviction and the only remaining step is the formal entry of judgment and the imposition of sentence), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). Appellant now argues that since the attempted armed robbery conviction was "going to be appealed" it was improperly used to establish this aggravating factor. We rejected this argument in Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). This aggravating factor was properly found by the trial court.
Appellant argues that the trial court erroneously found that the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. We agree that this aggravating factor was improperly found to exist by the trial court. The trial court's assumption was that the only reason the murder was committed was to avoid capture or detection. In Riley v. State, 366 So.2d 19 (Fla. 1978), we held:
[T]he mere fact of a death is not enough to invoke this factor when the victim is not a law enforcement official. Proof of the requisite intent to avoid arrest and detection must be very strong in these cases.
Id. at 22. The requisite strength of proof is lacking here. The trial court's assumption that the murder was committed solely to eliminate a witness is only one of several possible explanations for this murder. Evidence adduced at trial revealed that neither appellant nor his brother knew the victim and there is nothing about the facts of this murder which suggests that it was committed solely to eliminate a witness. The trial court's assumption is too speculative to support upholding this aggravating factor.
We also agree with appellant that the trial court's finding this murder to be especially heinous, atrocious or cruel cannot stand. All murders are by their nature repugnant to our society. However, as we have repeatedly held, this aggravating factor is to be utilized only in those cases "where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Where, as here, a single fatal shot is fired and the victim dies *412 shortly thereafter simply cannot support a finding of an especially heinous, atrocious or cruel murder. See, e.g., Teffeteller v. State, 439 So.2d 840, 846 (Fla. 1983) ("The criminal act that ultimately caused death was a single sudden shot from a shotgun. The fact that the victim lived for a couple of hours in undoubted pain and knew that he wasfacing [sic] imminent death, horrible as this prospect may have been, does not set this senseless murder apart from the norm of capital felonies."), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).
Appellant concedes that the trial court properly found that the murder was committed during the course of a robbery. We are left then with two valid aggravating factors and nothing in mitigation. Under such circumstances, death is presumed to be the appropriate sentence. See, e.g., Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Appellant, however, contends that Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), requires that his death sentence be vacated. We disagree.
In Enmund the United States Supreme Court reversed our affirmance of Enmund's sentence of death because we had affirmed "in the absence of proof that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken." Id. at 801, 102 S.Ct. at 3378. Under Enmund it is a violation of the eighth and fourteenth amendments to impose the death penalty on a defendant in the absence of such proof. Recently, the Supreme Court in Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), held that the Constitution does not require a specific jury finding on the Enmund issue. The Constitution requires only that the "requisite findings are made in an adequate proceeding before some appropriate tribunal-be it an appellate court, a trial judge, or a jury." Id. at 106 S.Ct. at 700 (footnote omitted).
Therefore, the threshold issue for our determination is whether an Enmund assessment can be made based upon the record before us. If such an assessment can be made, the next step of the inquiry must focus on whether the record supports the conclusion that the defendant killed or attempted to kill or intended or contemplated that life would be taken. We conclude that such an assessment can be made from this record and that the evidence shows that by being a major participant in the armed robbery, appellant, at the very least, contemplated that life would be taken.
The evidence at trial showed that appellant and his brother planned this robbery for several hours prior to its commission. Appellant knew that his brother had a firearm in his possession when the two exited their vehicle and entered the victim's place of business. Indeed, the two brothers' criminal plan required that one of them hold the victim at bay by gunpoint thus leaving the other free to pilfer the victim's cash register. It was when the victim here attempted to stop appellant that Clinton Jackson shot and killed the victim. In short, both appellant and his brother were major participants in this crime, each playing an integral role in order to ensure the success of their unlawful scheme. Under these facts the only reasonable conclusion that can be drawn is that appellant contemplated or intended that lethal force would be used should he and his brother encounter resistance from their prey. Therefore, we hold that appellant's sentence of death does not violate the concerns expressed in Enmund.[6]
In Cabana the Supreme Court recognized that instances may arise in which an appellate court's fact finding on the Enmund issue would be "inadequate." *413 106 S.Ct. at 698, n. 5. In order to ensure a defendant's right to an Enmund factual finding and to facilitate appellate review of this issue, we direct the trial courts of this state in appropriate cases to utilize the following procedure. The jury must be instructed before its penalty phase deliberations that in order to recommend a sentence of death, the jury must first find that the defendant killed or attempted to kill or intended that a killing take place or that lethal force be employed. No special interrogatory jury forms are required. However, trial court judges are directed when sentencing such a defendant to death to make an explicit written finding that the defendant killed or attempted to kill or intended that a killing take place or that lethal force be employed, including the factual basis for the finding, in its sentencing order. Our holding here mandating this procedure will only be prospectively applied. Past failures of trial courts to follow this procedure will not be considered reversible error.
We reject appellant's final contention that the death penalty is disproportionate to the crime he committed. We have repeatedly held that when there are one or more valid aggravating factors and none in mitigation, death is presumed to be the appropriate penalty. See, e.g., White v. State, 446 So.2d 1031 (Fla. 1984); Armstrong v. State, 399 So.2d 953 (Fla. 1981). Our independent review leads us to conclude that imposition of the death sentence in this case is not comparatively disproportionate. See, e.g., Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985).
Accordingly, appellant's conviction for armed robbery and first-degree murder and the sentence of death are affirmed.[7]
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD and SHAW, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion, in which BARKETT, J., concurs.
OVERTON, Justice, concurring in part, dissenting in part.
I concur with Nathaniel Jackson's conviction for first-degree murder under our felony murder rule. I dissent, however, from the imposition of the death penalty because I conclude that the majority opinion is contrary to the principles enunciated by the United States Supreme Court in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
In this case, the death penalty is imposed on a non-triggerman in an armed robbery. I find that, to impose the death penalty on a non-triggerman, Enmund requires some evidence that the defendant knew lethal force would be used during the felony offense. As I interpret the majority view, every armed robbery, by its nature, would carry an inference or presumption that a non-triggerman knew lethal force would be used. I disagree with this construction of Enmund. The nature of the offense, by itself, is insufficient to meet the Enmund principles that a non-triggerman must have intended a killing take place or knew lethal force would be employed. I do agree with the majority that a jury must be instructed on Enmund principles whenever the defendant is a non-triggerman.
BARKETT, J., concurs.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] § 921.141(5)(b), Fla. Stat. (1983).
[3] § 921.141(5)(d), Fla. Stat. (1983).
[4] § 921.141(5)(e), Fla. Stat. (1983).
[5] § 921.141(5)(h), Fla. Stat. (1983).
[6] The facts sub judice stand in stark contrast to those found by this Court in Enmund v. State, 399 So.2d 1362 (Fla. 1981). We noted that there was no direct evidence placing Enmund at the scene of the murder and that the jury likely inferred that Enmund was waiting in a car a few hundred feet away in order to help the robbers escape. Id. at 1370.
[7] The trial court did not impose a sentence for the armed robbery conviction.