513 So.2d 1045 (1987)
Angel DIAZ, Appellant,
v.
STATE of Florida, Appellee.
No. 68493.
Supreme Court of Florida.
October 8, 1987.
*1046 Helen Ann Hauser, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Susan Odzer Hugentugler, Asst. Atty. Gen., Miami, for appellee.
SHAW, Justice.
One of three Spanish-speaking men shot and killed the bar manager during the December 29, 1979, holdup of a Miami bar. No one witnessed the shooting. The majority of the patrons and employees had been forcibly confined to a restroom. A dancer hiding under the bar did not see the triggerman. Angel Diaz was charged with the crimes and convicted of first-degree murder, four counts of kidnapping, two counts of armed robbery, one count of attempted robbery, and one count of possessing a firearm during the commission of a felony. Diaz conducted his own defense with standby counsel from the opening statements through conviction. He was represented by counsel during jury selection and the *1047 sentencing phase. The trial court sentenced Diaz to a total of 834 years of imprisonment and imposed the jury's recommended sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Diaz challenges his convictions on several grounds. He first argues that the court erroneously denied an ore tenus defense motion for continuance. The defense received notice one week before trial that the state intended to call Gajus as a witness. Diaz allegedly discussed the robbery and murder with Gajus who occupied a neighboring cell during Diaz's pre-trial incarceration. Defense counsel immediately deposed Gajus after receiving the state's notice, but, on the first day of trial, moved for a continuance, claiming insufficient time to discuss these statements with Diaz or to investigate their truth. We find no abuse of discretion in the trial court's denial of Diaz's requested continuance.
Diaz next contends that the court erroneously excused for cause two jurors who opposed the death penalty creating a conviction-prone jury. We have previously rejected this argument. Lambrix v. State, 494 So.2d 1143 (Fla. 1986); Dougan v. State, 470 So.2d 697 (Fla. 1985), cert. denied, 475 U.S. 1098, 106 S.Ct. 1499, 89 L.Ed.2d 900 (1986).
Diaz claims that the security measures at trial and his appearance in shackles biased the jury. The court's obligation to maintain safety and security in the courtroom outweighs, under proper circumstances, the risk that the security measures may impair the defendant's presumption of innocence. See Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); Dufour v. State, 495 So.2d 154 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987). The court found in the instant case that sixty to seventy percent of the security personnel were in plain clothes and blended in with the spectators. The court suggested that Diaz obstruct the jury's view of the shackles by keeping his pants legs pulled down over the shackles or by placing a box or briefcase in front of his feet. Diaz made no effort to hide the shackles. We find that Diaz's prior murder and armed robbery convictions and his record of escapes and prior incidents of violence support the court's decision that the security measures taken were the minimum required.
Diaz next argues that the court erred in allowing him to proceed pro se because (1) his request was not timely, (2) he needed an interpreter, and (3) his movement before the jury during such representation drew attention to his shackles. Diaz made his request after jury selection, but before the opening statement. The court conducted a Faretta inquiry,[1] warning Diaz of the difficulties of proceeding pro se, and expressing its opinion that to do so was not in his best interest. The court emphasized the problems arising from his need for an interpreter:
THE COURT: ... Mr. Diaz, you heard all the statements that the Court made and my inquiry into your ability to practice law, to represent yourself in this courtroom, understanding what you believe to be the facts of the case as you know them, Mr. Lamons' ability as a defense attorney, the case the State has against you, your inability to speak the English language, the necessity of an interpreter at every stage of this proceeding, and the fact that the State is requesting the death penalty in this particular case.
Do you, yes or no, desire to represent yourself?
THE DEFENDANT: Yes, ma'am.
The record shows that Diaz competently, knowingly, and voluntarily waived his right to counsel and exercised his right to conduct his own defense. He made his choice knowing that he would proceed in shackles. His claimed ignorance of the fact that such representation might prejudicially increase the shackles impact on the jury is untenable. Further, we reject his contention that the court should have revoked its permission to proceed pro se when Diaz argued with the witnesses.
*1048 Diaz contends that all death sentences are cruel and unusual in violation of the eighth amendment to the United States Constitution. This argument was rejected in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied sub nom., Hunter v. Florida, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), and a multitude of subsequent cases.
Diaz next argues that we must vacate his death sentence because the court failed to instruct the jury on the intent necessary to support a sentence of death under Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). As we recently noted in Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987), the United States Constitution does not require a specific jury finding of the requisite intent. Such findings may be made in an "adequate proceeding before some appropriate tribunal  be it an appellate court, a trial judge, or a jury." Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 700, 88 L.Ed.2d 704 (1986) (footnote omitted).
The United States Supreme Court recently revisited Enmund in Tison v. Arizona, ___ U.S. ___, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987), stating

Enmund held that when "intent to kill" results in its logical though not inevitable consequence  the taking of human life  the Eighth Amendment permits the State to exact the death penalty after a careful weighing of the aggravating and mitigating circumstances. Similarly, we hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.
The court concluded that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." Id. (footnote omitted).
Turning to the instant case, Candice Braun testified that on the night of December 29, 1979, Diaz returned to their home and told her that Angel Toro shot a man during the robbery. Gajus, however, who occupied the neighboring cell during Diaz's pre-trial incarceration, provided evidence that Diaz shot the victim. He testified as follows:
[Diaz] indicated that he shot the man.
Q. Where did he indicate he shot the man?
A. In the chest.
Q. Did he ever come out and say to you in the words, "I shot the man in the chest"?
A. No, he did not.
Q. You were inferring that from his indications?
A. Yes.
We need not determine, however, whether this evidence supports a finding of intent to kill. As in Tison, Diaz was actively involved in and present during the commission of the crimes. He and his fellow robbers each discharged a gun during the robbery. There is evidence that Diaz's gun had a silencer. Eight to twelve persons occupied the bar at the time of the robbery. Based on our review of the record, we find that Diaz was a major participant in the felonies and at the very least was recklessly indifferent to human life. The Enmund/Tison culpability requirement is thus satisfied.[2]
We agree with Diaz that the court erroneously found the aggravating factor that he knowingly caused great risk of danger to many persons. This must be based on a high probability, not a mere possibility or speculation. Lusk v. State, 446 So.2d 1038 (Fla.), cert. denied, 469 U.S. 873, *1049 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). The court based its finding on the fact that Diaz carried a gun equipped with a silencer; that during the robbery he fired the gun over the head of patron Robbins; that the shot ricocheted off a rotating glass ball centered over the stage where Petterson was dancing; and that the bullet then ricocheted off a mirror, and finally became lodged in the women's dressing area. It is not highly probable that a single shot fired toward the ceiling will ricochet and, in doing so, create great risk of danger to many people.
The court also found the following aggravating factors: (1) Diaz was under sentence of imprisonment at the time of the crime; (2) Diaz had previously been convicted of another capital felony involving the use or threat of violence; (3) Diaz committed the murder during the commission or attempt to commit a capital felony (kidnapping); and (4) Diaz committed the murder for pecuniary gain. The court found no mitigating circumstances. "[W]hen there are one or more valid aggravating factors and none in mitigation, death is presumed to be the appropriate penalty." Jackson, 502 So.2d at 413 (citations omitted).
Diaz contends, however, that his death sentence is disproportionate to his crimes because there is insufficient evidence that he shot the victim and his codefendant received a life sentence. We disagree. We have already determined that death is appropriate under Enmund and Tison, even assuming insufficient evidence that Diaz shot the victim. Further, although a codefendant's sentence may be relevant to proportionality where, for instance, one defendant, as the dominant force, is more culpable than a codefendant follower, see Marek v. State, 492 So.2d 1055 (Fla. 1986), "[p]rosecutorial discretion in plea bargaining with accomplices ... does not violate the principle of proportionality." Garcia v. State, 492 So.2d 360, 368 (Fla.), cert. denied, ___ U.S. ___, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986). We have conducted a review of similar cases and find that the death sentence is not comparatively disproportionate. See, e.g., Jackson; Blanco v. State, 452 So.2d 520 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985).
We reject Diaz's final argument that the court committed reversible error by making a prejudicial remark during the sentencing phase. Diaz waived this issue by rejecting the court's offer to give a curative instruction.
Accordingly, we affirm Diaz's convictions and sentences.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
BARKETT, J., concurs specially with an opinion.
BARKETT, Justice, specially concurring.
I believe the majority correctly affirms the conviction and sentence in this case. I write separately only to reiterate my concurrence with Justice Overton's dissent in Jackson v. State, 502 So.2d 409 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 3198, 96 L.Ed.2d 686 (1987), pertaining to the Enmund issue. I also believe that if one believed that this defendant was not the actual triggerman, the proportionality argument would have merit. As we previously have held, a lesser sentence imposed on the actual triggerman may preclude the imposition of the death penalty against his accomplice. Slater v. State, 316 So.2d 539 (Fla. 1975). However, I cannot fault the result based on the record in this case, which could have convinced a judge and jury beyond a reasonable doubt that Diaz was the more culpable of the two perpetrators. Moreover, the defendant's prior record in this instance includes an armed robbery, two escapes, the assault and battering of correctional officers, and a conviction for murdering the director of a drug rehabilitation center by stabbing him nineteen times while he slept. On this record, there is sufficient evidence and sufficient *1050 aggravating factors to support the conviction and sentence.
NOTES
[1] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[2] We recognized in Jackson that an appellate court's factual findings may be inadequate in some cases. See Cabana. We again direct the trial courts to instruct juries that, in order to recommend death, they must make findings satisfying Enmund and now Tison. Further, we reiterate that the trial courts shall include in their sentencing orders findings supporting the Enmund/Tison culpability requirement. See Tison; Enmund; Jackson.