717 So.2d 472 (1998)
Arturo BENEDITH, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 89368.
Supreme Court of Florida.
June 11, 1998.
Rehearing Denied September 10, 1998.
*473 James B. Gibson, Public Defender, and George D.E. Burden, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, for Appellant, Cross-Appellee.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, for Appellee, Cross-Appellant.
PER CURIAM.
We have on appeal the convictions and judgment of the trial court imposing a sentence of death upon Arturo Benedith. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm appellant's convictions for first-degree felony murder and robbery with a firearm but vacate the sentence of death and remand for imposition of a sentence of life imprisonment without eligibility for parole for twenty-five years.
On the night of May 5, 1993, the Melbourne Police Department responded to a complaint at the Colonial Motel in Melbourne. At the scene, the police found John Shires' dead body face down in the motel parking area. At trial, Shires' roommate testified that Shires had placed a newspaper advertisement offering his 1991 red Nissan Stanza for sale. On the evening of the murder, Shires left his home after telling his roommate he was going to sell his car.
During the afternoon of that same day, May 5, 1993, witness George Lane saw appellant Benedith sitting with Thomas Taylor *474 outside the Colonial Motel where Lane lived with his girlfriend. Later that evening, around 10 p.m., Lane was returning from an errand when he again saw appellant and Taylor who at that time were standing together beside a red car near a telephone booth in the motel parking area along with a man who was holding some papers and was later identified as Shires. Lane testified that as he drove into the motel parking area he saw Shires standing "in the door" of the car. Appellant was standing behind Shires and Taylor in front of the open door. Lane parked his car and went into his motel room. Lane looked out toward the parking area four or five minutes later after he heard three gunshots. When he looked out the window of his room after hearing the shots, Lane noticed that the red car had been moved to a slightly different location. He also saw Shires' body on the ground and saw Taylor quickly get into the passenger seat of the red car just before the car sped away. He did not testify that he saw appellant after the shooting. Lane was the sole eyewitness to testify as to events surrounding the shooting.
The medical examiner testified that two bullets entered the left side of Shires' face, and the third bullet entered in the middle right side of his back and passed through his lungs and heart. He testified that he could not determine the order in which the bullets were fired into Shires' body.
Witness Ishmael Loblack, an auto mechanic, testified that around noon on May 5, 1993, the day of the murder, appellant and Taylor visited him at his trailer. Appellant asked Loblack to paint a car that appellant was planning to drive to New York. About midnight that same night, appellant knocked on Loblack's door and told Loblack that he had the car ready to be painted for his trip to New York. Loblack declined to paint the car and advised appellant to return the next day. Loblack identified Shires' car as the car appellant had at Loblack's trailer the night of May 5.
Police found Shires' car abandoned a few blocks from the murder scene. Appellant's fingerprints were on the hood, right and left fenders, driver-side windshield post, and trunk lid. Codefendant Taylor's fingerprints were on the front passenger-side door. Just over a month later, appellant was identified as being in possession in New York City of what was proven to be the murder weapon.
Appellant was charged with first-degree premeditated murder and robbery with a firearm. He was convicted by a jury of first degree felony murder during a robbery and robbery with a firearm. After a penalty phase proceeding, the jury recommended the death sentence by a vote of ten to two. The trial judge followed the jury's recommendation and sentenced Benedith to death.
On appeal, Benedith raises fifteen claims.[1] Of these, we will discuss claims one and three. We find the claims concerning *475 penalty-phase issues to be moot because we are remanding to the trial court with directions to impose a life sentence.[2] The remaining claims are procedurally barred or without merit.[3] The State cross-appeals, raising two claims.[4]
In his first claim, appellant contends that the trial court erred in failing to grant a judgment of acquittal for first-degree felony murder because the circumstantial evidence was legally insufficient to support the guilty verdict. Appellant cites McArthur v. State, 351 So.2d 972 (Fla.1977), and Davis v. State, 90 So.2d 629 (Fla.1956). In these cases involving only circumstantial evidence this Court held that the State's evidence must not only be consistent with defendant's guilt but must also be inconsistent with any reasonable hypothesis of innocence. McArthur, 351 So.2d at 978 (quoting Davis, 90 So.2d at 631). Appellant offers as his hypothesis of innocence the explanation that he was at the Colonial Motel talking with Shires because he planned to purchase Shires' car, not to steal it, and that he did not steal the car but only helped Taylor get away after Taylor killed Shires.
In State v. Law, 559 So.2d 187 (Fla.1989), we stated the trial judge's task in deciding a motion for acquittal in a circumstantial evidence case:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Law, 559 So.2d at 189 (citations and footnote omitted).
Our review of the present record reveals that evidence presented at trial linked appellant to a plan to rob the victim of his car. Appellant contacted Loblack, the auto mechanic, on the day of the murder about painting a car he wanted to drive to New York. On the night of the murder, appellant was identified by Loblack as having the victim's car. Appellant's fingerprints were on the car. Appellant was identified as being with the victim beside the victim's car within five minutes of the firing of the shots that killed the victim. The victim's car was seen leaving the parking lot where the victim's body was left after the murder. Within a month of the murder, the murder weapon was in appellant's possession in New York when appellant attempted a robbery to which appellant pled guilty. The other participant in this crime was fourteen years old at the time of the crime and was seen in the front passenger seat of the victim's car as the car was driven away just after the murder. Although appellant was not seen in the car as it was being driven away, appellant was no *476 longer seen in the motel parking lot after the car was driven away.
Based on these facts in the record, we find that the evidence on which the State relies is sufficient for the judge to have submitted this case to the jury on the theory of felony murder as to appellant. Jackson v. State, 575 So.2d 181, 186 (Fla.1991). Therefore, we find no error in the trial court's denial of appellant's motion for judgment of acquittal for the felony murder of John Shires or for the armed robbery which was the underlying felony.[5] We affirm appellant's convictions for first-degree murder and armed robbery.
This brings us to the penalty phase. We conclude that appellant's death sentence cannot be sustained on the basis of the evidence presented by the State because the evidence was insufficient to withstand an analysis pursuant to Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and Jackson, 575 So.2d at 190.[6]
We find this case to be remarkably similar to Jackson, in which we affirmed felony murder and robbery convictions based upon circumstantial evidence. Id. at 193. We vacated the death sentence because we found insufficient evidence to establish that Jackson was the actual shooter or that Jackson's state of mind was sufficiently culpable to rise to the level of reckless indifference to human life warranting a death sentence for felony murder. Id. at 192-93. In Jackson, we stated:
In Enmund and Tison, the Court said that the death penalty is disproportional punishment for the crime of felony murder where the defendant was merely a minor participant in the crime and the state's evidence of mental state did not prove beyond a reasonable doubt that the defendant actually killed, intended to kill, or attempted to kill. Mere participation in a robbery that resulted in murder is not enough culpability to warrant the death penalty, even if the defendant anticipated that lethal force might be used, because "the possibility of bloodshed is inherent in the commission of any violent felony and this possibility is generally foreseeable and foreseen." Tison, 481 U.S. at 151, 107 S.Ct. at 1684. However, the death penalty may be proportional punishment if the evidence shows both that the defendant was a major participant in the crime, and that the defendant's state of mind amounted to reckless indifference to human life. As the Court said, "we simply hold that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement." Tison, 481 U.S. at 158, 107 S.Ct. at 1688. Courts may consider a defendant's "major participation" in a crime as a factor in determining whether the culpable state of mind existed. However, such participation alone may not be enough to establish the requisite culpable state of mind. Id., 481 U.S. at 158 n. 12, 107 S.Ct. at 1688 n. 12.
575 So.2d at 190-91.
We then held in respect to Jackson:
Although the evidence against Jackson shows that he was a major participant in the crime, it does not show beyond every reasonable doubt that his state of mind was any more culpable than any other armed robber whose murder conviction rests solely upon the theory of felony murder. See Tison, 481 U.S. at 150-51, 107 S.Ct. at 1684-85. The entire case is based on circumstantial evidence. The totality of the record shows that Jackson previously indicated his intent to rob Phillibert's store; that Jackson was seen driving in the vicinity of the store shortly before and *477 after the crime; that Jackson had been driving with his brother, whose fingerprints were found on the cash register; that Jackson said afterward "we had to do it because he had bucked the jack"; and that Jackson asked his mother to tell his brother to say "he hadn't been nowhere around the hardware store and get rid of the gun." A reasonable inference could be drawn from the evidence in this record that either of the two robbers fired the gun, contrary to the finding of the trial judge. There was no evidence presented in this trial to show that Jackson personally possessed or fired a weapon during the robbery, or that he harmed Phillibert. There was no evidence that Jackson carried a weapon or intended to harm anybody when he walked into the store, or that he expected violence to erupt during the robbery. There was no real opportunity for Jackson to prevent the murder since the crime took only seconds to occur, and the sudden, single gunshot was a reflexive reaction to the victim's resistance. No other innocent lives were jeopardized.
575 So.2d at 192-93 (footnote omitted).
In this case, the trial court failed to follow the mandate of Diaz v. State, 513 So.2d 1045 (Fla.1987), that trial courts shall include in their sentencing orders findings supporting the Enmund/Tison culpability requirement. This is mandated not only to benefit our review but also to conform to Cabana v. Bullock, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). We again state that trial courts are to include such findings in their sentencing orders. See Diaz, 513 So.2d at 1048 n. 2.
Rather than remand this case for compliance with Diaz, we have reviewed the record and determine, as we did in Jackson, that the record is lacking in competent, substantial evidence to support the Tison culpable state of mind requirement. The evidence does not prove that appellant was the actual shooter, that he procured the firearm for use in the robbery, that he possessed the firearm before or during the robbery, that he or Taylor had ever used a firearm previously in a robbery, or that he could have prevented the use of the firearm while the robbery was being committed. Based upon the evidence, a reasonable inference could be drawn that either appellant or Taylor did the actual shooting.[7] Thus, the death sentence must be vacated.
Accordingly, having reviewed the entire record, we affirm the convictions for armed robbery[8] and first-degree murder but vacate appellant's death sentence. We direct that upon remand he be sentenced to life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Appellant's claims are as follows: (1) the trial court erred in failing to grant a judgment of acquittal for first-degree felony murder because the evidence was legally insufficient to support the guilty verdict; (2) appellant's death sentence is disproportionate; (3) the trial court erred in denying appellant's motion to preclude the death penalty based on a lack of showing that his state of mind evidenced a reckless indifference to human life; (4) the trial court erred in denying appellant's counsel's motion to withdraw before trial because appellant had filed a Florida bar grievance against him; (5) the trial court erred in permitting the State to make prejudicial details of crimes committed upon a different victim the feature of the penalty phase; (6) the trial court erred in permitting the introduction of unduly prejudicial evidence of the meaning of information written on a business card; (7) certain remarks of the prosecutor in opening statement and closing argument violated appellant's due process right to a fair trial; (8) the trial court erred in permitting the victim's sister to testify as to victim impact; (9) the trial court erred in instructing the jury on the aggravator of murder committed during the course of a felony (robbery); (10) the trial court erred in refusing to strike certain jurors for cause; (11) the trial court erred in denying the mistrial motion made when a State rebuttal witness testified that appellant had been arrested on an unrelated matter; (12) the trial court erred in denying a motion to strike alternate jurors because they had seen the defendant in shackles; (13) the provision of Florida's death penalty statute that allows a jury to return a death recommendation by a bare majority is unconstitutional; (14) the trial court erred in refusing to give specific jury instructions on the nonstatutory mitigators offered by the defense; (15) the trial court erred in sentencing appellant outside the guideline range for count II, robbery with a firearm.
[2] We do not reach claims two, five, eight, nine, eleven, twelve, thirteen, and fourteen because of our decision to set aside the sentence of death.
[3] Claim seven is procedurally barred. See Duest v. State, 462 So.2d 446, 448 (Fla.1985). Claim ten is procedurally barred because at the time appellant challenged the venirepersons for cause, he had not exhausted his peremptory challenges. See Trotter v. State, 576 So.2d 691, 693 (Fla. 1990). Claims four and six are without merit and do not warrant discussion. We reject claim fifteen, alleging that the trial court erred in sentencing appellant outside the guideline range for count II (robbery with a firearm), because we affirm the conviction of first-degree murder. See Hansbrough v. State, 509 So.2d 1081, 1087 (Fla. 1987) (conviction and sentence for first-degree murder is valid reason for departure from sentencing guidelines).
[4] The State's claims are as follows: (1) the trial court erred in failing to find as an aggravator that the capital felony was committed during the course of a robbery (felony murder); (2) the trial court erred in precluding the State from putting on rebuttal evidence relating to the degree of culpability of the codefendant. Because we remand for imposition of a life sentence on grounds unrelated to these penalty-phase aggravation and mitigation issues, we do not reach these claims.
[5] The trial court declined to instruct the jury that it could consider a verdict of premeditated first degree murder.
[6] In Enmund, the United States Supreme Court held that imposition of the death penalty in a felony murder case in which the defendant did not kill, intend to kill, or attempt to kill violates the Eighth Amendment prohibition against cruel and unusual punishment as applied to the states through the Fourteenth Amendment of the United States Constitution. In Tison, the Court held that a finding of major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement for consistency with the Eighth Amendment.
[7] Lane testified that codefendant Taylor nervously patted his shirt and seemed to be hiding something when he visited Lane's room during the afternoon before the shooting of Shires.
[8] See supra note 3.