[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12184
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-01860-SDM-EAJ


SHAWN MARTIN,

                                             Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                             Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 23, 2017)

Before HULL, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Shawn Martin, a Florida prisoner, appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition. Following a probation-revocation hearing in Florida state court, Martin was sentenced to a 35-year imprisonment term. This Court granted a certificate of appealability ("COA") on one issue: whether Martin's state trial counsel, Rick Terrana, provided ineffective assistance of counsel at the probation-revocation hearing by failing to advise Martin of the State's burden to show that Martin's probation violations were "willful and substantial." After thorough review, we affirm the district court's denial of Martin's § 2254 petition.

## I.  BACKGROUND

### A.    Underlying State Court Convictions

In Florida state court (the "state trial court"), Martin pled guilty to charges of lewd or lascivious battery on a child, procurement of a child for prostitution, possession of photographs depicting sex with a child, promotion of child sex acts, and possession of child pornography. As part of his plea, Martin agreed to provide assistance to the State and to law enforcement in exchange for a five-year maximum term of imprisonment.[1] At sentencing, the state trial court sentenced Martin to a term of 48 months' imprisonment and 10 years of sex-offender probation. In June 2004, following his release from prison, Martin began serving his probationary term.

---

[1]Barring the plea agreement, Martin's Criminal Punishment Code Scoresheet provided for a minimum permissible sentence of approximately 34 years in prison.

2

In April 2005, the State filed an affidavit alleging that Martin violated his probation by: (1) leaving the county without the permission of his probation officer; (2) disregarding his probation officer's instructions by not traveling directly from his job to his home; (3) failing to answer truthfully questions about whether he was driving; and (4) failing to maintain a driving log.

## B.    Probation-Revocation Hearing and Sentencing

On April 21, 2005, the state trial court held a hearing concerning Martin's alleged violations of probation. Martin testified, admitting to the four violations and offering explanations for each of them.

As to the first violation, Martin testified that he had a travel permit to leave the county for his job. As to the second violation, Martin testified that, on one occasion, he made a brief detour on his drive home from work to pick up a lasagna that his aunt had made for him. As to the third violation, Martin testified that he was truthful in response to his probation officer's questions because he had been receiving rides to work, which he believed was permissible. As to the fourth violation, Martin testified that his probation officer never presented him with a driving log to maintain.

Martin's probation officer offered contrasting testimony. Martin's probation officer testified that Martin made several detours from his job commute, that he failed to tell the probation officer that he was driving his own car (not merely

3

receiving rides from others), and that he was repeatedly informed of the requirement to maintain a driving log.

Following the probation officer's testimony, Martin's counsel Terrana argued to the state trial court that Martin's probation should not be revoked because Martin's violations, even if admitted, were not willful and substantial. Martin's counsel described Martin's violations as "a couple of incidents where driving wasn't reported or he was driving in an area that he wasn't supposed to be driving without consent." Martin's counsel suggested that Martin's violations were "something other than willful and substantial . . . [because] there is no reason for him to deceive or engage in a pattern of deception as the State is suggesting."

Following the arguments made by Martin's counsel, the state trial court revoked Martin's probation and imposed a sentence of 35 years' imprisonment.[2]

## C.    Martin's State-Court Challenges to His Sentence

On May 27, 2005, Martin moved to mitigate his sentence or withdraw his admissions to the probation violations. Martin argued that, at the April 21, 2005 probation-revocation hearing, he did not make a full presentation concerning his probation violations. Martin also argued that, in the time since the April 21, 2005 hearing, Martin had obtained witnesses who would contradict his probation

---

[2]Martin's Criminal Punishment Code Scoresheet reflected a minimum possible prison sentence of approximately 34 years' imprisonment, with a maximum sentence of 85 years' imprisonment.

officer's testimony at the April 21, 2005 hearing. On June 7, 2005, the state trial court held a hearing on Martin's motion and denied relief.

Martin appealed the state trial court's judgment revoking his probation to the Florida Second District Court of Appeal ("Second DCA"). On April 18, 2007, the Second DCA summarily affirmed the state trial court's judgment. Martin v. State, 954 So. 2d 34 (Fla. Dist. Ct. App. 2007).

## D.    Rule 3.850 Motions and Hearing

On April 17, 2008, Martin filed a motion for postconviction relief, pursuant to Florida Rule of Criminal Procedure 3.850, in the state trial court. The state trial court dismissed the motion without prejudice as facially insufficient.

On June 22, 2009, Martin filed an amended 3.850 motion for postconviction relief. In the amended motion, Martin argued that he received ineffective assistance of counsel at his April 21, 2005 probation-revocation hearing because his attorney Terrana: (1) misadvised him about the sentence he would receive if he admitted to the probation violations; (2) failed to advise him of the State's burden to prove that the alleged violations were willful and substantial; and (3) threatened to withdraw from the case if Martin did not admit to the violations. Martin asserted that, because of Terrana's errors, Martin's admissions were not made knowingly and voluntarily. Martin also asserted that, had he known of the State's burden to prove

5

that his probation violations were willful and substantial, he would not have admitted to the violations.

On November 17, 2010, the state trial court held an evidentiary hearing on Martin's amended 3.850 motion for postconviction relief. Martin testified that, prior to Martin's admissions, Terrana assured him that he would be placed back on probation because the violations were "just . . . technical." Martin also testified that Terrana appeared "confused" at the April 21, 2005 probation-revocation hearing and entered the courtroom "empty-handed" with no files on Martin's case. According to Martin, Terrana made no mention of the State's "willful and substantial" evidentiary burden until after Martin admitted to the probation violations.

Martin also called witnesses to testify about his probation violations. One witness, Martin's aunt, testified that she only saw Martin once during his probationary term, when he briefly came to her house to pick up a lasagna. Martin's aunt testified that Martin left her house "within . . . a minute or two" of arriving.

Counsel Terrana's testimony contradicted Martin's testimony. Terrana testified that, prior to the April 21, 2005 probation-revocation hearing, he discussed Martin's probation violations with him. Terrana testified that Martin "strategized with [Terrana] about getting a sentence . . . that would allow [Martin]

in effect to get out because of his credit time." Terrana also stated that he had been concerned that, if Martin were to go to a probation-revocation hearing, deny the violations, and lose, Martin could receive the maximum sentence of 80 years in prison. Terrana stated that he was in part concerned about this possibility because he knew the state court trial judge "to be an extremely hard sentencer." According to Terrana, he shared this concern with Martin, and the two "agreed . . . that the best course of action for [Martin] would be to admit to the violations of probation and . . . explain [the violations] to [the state trial court]." Terrana considered this to be a "strategic decision" that was calculated to ensure a lesser sentence than what might result if Martin challenged whether the violations occurred.

According to Terrana, he also did not assure Martin that Martin would be reinstated to probation if Martin admitted to the probation violations. Terrana testified that he only told Martin that such an outcome was possible "given all the circumstances." Terrana further stated that, while he did not recall a specific conversation in which he informed Martin of the State's "willful and substantial" evidentiary burden, he believed Martin was aware of this burden because Terrana "argued [it] over and over to the judge."

On February 14, 2011, the state trial court denied Martin's amended 3.850 motion for postconviction relief, finding that Terrana's testimony credibly refuted Martin's ineffective assistance of counsel claims. The state trial court determined

7

that Martin's decision to admit to the probation violations was "a reasonable strategic decision under these circumstances." The state trial court also determined that, "considering the totality of the circumstances surrounding [Martin's] violations and admission, . . . there [was not] a reasonable probability that [Martin] would have proceeded to a revocation hearing." Martin appealed the state trial court decision, but the Second DCA summarily affirmed. See Martin v. State, 111 So. 3d 889 (Fla. Dist. Ct. App. 2013).[3]

## E.    Section 2254 Petition

On July 11, 2013, Martin filed a § 2254 petition, claiming ineffective assistance of counsel in violation of his Sixth Amendment and Fourteenth Amendment rights. Martin raised allegations about Terrana's performance, stating that Terrana never informed him of the State's "willful and substantial" evidentiary burden and never investigated potential defenses to the alleged probation violations. Martin argued that, without that information, he could not make a knowing and voluntary decision to waive his defenses to the allegations. Martin also asserted that the state trial court's conclusion—that Terrana's performance was not deficient and that he made a reasonable strategy decision—constituted an

---

[3]We need not decide here whether to look through to the state trial court decision or the summary Second DCA decision because it does not matter to the result.  This avoids any complications whether the Supreme Court agrees or disagrees with our Court's decision in Wilson v. Warden, 834 F.3d 1227, 1232-33 (11th Cir. 2016) (en banc), cert granted, 2017 WL 737820 (U.S. Feb. 27, 2017) (No. 16-6855).

8

unreasonable application of clearly established federal law and an unreasonable determination of the facts. The State filed a response, and Martin filed a reply.

On April 5, 2016, the district court denied Martin's § 2254 petition. Citing Jones v. Wainwright, 604 F.2d 414, 416 (5th Cir. 1979), the district court determined that Martin's ineffective-assistance claim was not cognizable in a federal habeas action because there is no Sixth Amendment right to counsel in a probation-revocation proceeding, despite the fact that Martin had a state-created right to counsel under Florida law.

The district court alternatively concluded that Martin failed to meet his burden under § 2254. The district court did not find Terrana's performance to be constitutionally deficient because Terrana's advised strategy—that Martin admit to the probation violations in hopes of a lesser sentence—was "a reasonable strategy under the circumstances." Additionally, the district court determined that, even if Terrana never informed Martin of the State's "willful and substantial" evidentiary burden, Martin failed to "show that every reasonably competent attorney would have advised him that his violations were not willful and substantial." Martin also did not show that Terrana's actions impermissibly prejudiced Martin's case, as Martin's claim "ignore[d] the strategy that, by admitting the violations, he was in a better position to argue that his acts . . . did not warrant the loss of his liberty."

This appeal followed.

9

## II.  DISCUSSION

### A.    Standard of Review

In examining the denial of a § 2254 petition, "we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  When a state court denies relief on a federal constitutional claim, we presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  See Harrington v. Richter, 562 U.S. 86, 99, 131 S. Ct. 770, 784-85 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 101, 131 S. Ct. at 786.

We follow a "general framework of substantial deference" when reviewing federal issues that state courts have decided.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005).  To grant a § 2254 petition, we must find not only that the petitioner's claims are meritorious, but also that the state court's judgment: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

10

State court proceeding." 28 U.S.C. § 2254(d); Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1345-46 (11th Cir. 2011).

## B.    Applicable Law

To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Deficient performance is "representation [that] f[alls] below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. Prejudice requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. If the defendant fails to satisfy the performance prong, the court need not address the prejudice prong, and vice versa. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

When analyzing a claim of ineffective assistance under § 2254(d), this Court's review is "doubly" deferential to counsel's performance and the state court's decision. See Harrington, 562 U.S. at 105, 131 S. Ct. at 788. Under this standard, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

11

Under Florida law, a defendant's probation can only be revoked on the basis of a willful and substantial violation, which must be shown by the greater weight of the evidence. See Gilbert v. State, 913 So. 2d 84, 87 (Fla. Dist. Ct. App. 2005).

## C.    Discussion

In his brief on appeal, Martin again asserts that Terrana failed to inform him of the State's "willful and substantial" evidentiary burden. Martin argues that the evidence does not support that he understood the law in relation to the facts of his case. He also suggests that, had he been properly advised, he would have not admitted to his probation violations.

However, the state court's determination was not contrary to, and did not involve an unreasonable application of, federal law, nor was it based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).[4] In this case, the state court considered Martin's ineffective assistance claim according to Strickland's requirements and concluded that Martin did not suffer from constitutionally deficient counseling.

Regarding Terrana's allegedly deficient performance, the state court considered the full evidentiary record, which included the testimony of Martin, witnesses such as Martin's aunt, and Terrana. While the record suggests that

---

[4]Because Martin's ineffective assistance claim fails on the merits, we need not, and do not, address the district court's discussion of the scope of the Sixth Amendment right to counsel at a probation-revocation hearing.

Terrana could not recall a specific conversation in which he informed Martin of the State's "willful and substantial" evidentiary burden, Terrana also testified that he was "sure" he mentioned it to Martin because "[he] argued that over and over to the judge. That was [his] argument; [the violations] were not willful and substantial." Terrana also testified, and Martin does not dispute, that the two discussed Martin's admissions as a strategy designed to improve his chances of getting a lesser sentence before a judge known for harsh sentencing. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." Strickland, 466 U.S. at 681, 104 S. Ct. at 2061. Given the record evidence demonstrating Terrana's research of defense theories, consultation with Martin about those theories, and resulting strategic advice based on those theories, it was not unreasonable for the state court to determine that Terrana's performance did not fall below the constitutional minimum.

And even if Terrana's performance was constitutionally deficient, the state court also was not unreasonable in determining that no prejudice resulted. Specifically, the state court determined that "there [was not] a reasonable probability that [Martin] would have proceeded to a revocation hearing" barring Terrana's alleged mistakes. Prior to Martin's admissions, Terrana informed Martin

13

that, if he were to proceed to a probation-revocation hearing, challenge the violations, and lose, he could face a maximum sentence of 80 years' imprisonment. Even assuming arguendo that Martin had been perfectly informed of the State's burden to show that his violations were willful and substantial, it is far from clear from this record that Martin might have preferred to risk receiving such a sentence instead of attempting to secure a lower sentence by admitting to the technical violations and offering mitigating explanations. Thus, the state court did not unreasonably determine that Martin had not carried his burden to show prejudice.

### III.  CONCLUSION

For all of the above reasons, we affirm the district court's denial of relief.

**AFFIRMED.**