[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10247
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00045-RH-CAS


RONNEY STUCKEY,

Petitioner-Appellant,

versus

MICHAEL L. CREWS,
JULIE L. JONES,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 14, 2017)

Before HULL, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Ronney Stuckey, a Florida prisoner, appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his convictions and total life sentence for sexual battery on a child under 12 years of age and sexual battery of a child by familial or custodial authority. The district court granted Stuckey a certificate of appealability ("COA") on this issue: Whether Stuckey's trial counsel rendered ineffective assistance by failing to accurately advise Stuckey of the time he would serve if he accepted the State's plea offer of a 12-year sentence. After careful review, we affirm.

## I. Trial Proceedings in State Court

### A. Charges

In April 2006, an amended information charged Stuckey with one count of sexual battery on a child under 12 years of age by a defendant 18 years of age or older (Count 1) and one count of sexual battery by familial or custodial authority (Count 2). Both counts arose from Stuckey's ongoing abuse, from 1995 to 2002, of his then-girlfriend's daughter. Count 1 related to Stuckey's conduct occurring from 1995 to 1997, when the victim was between the ages of 9 and 12, and Count 2 related to Stuckey's conduct occurring from 1998 to 2002, when the victim was between the ages of 12 and 16. Stuckey entered a plea of not guilty.

2

## B.     Plea Offers

Prior to trial, the State made at least two plea offers to Stuckey, both of which he rejected.[1]  The first offer was for a 15-year prison sentence followed by lifetime probation.  In connection with that offer, defense counsel sent Stuckey a clear and thorough letter about the State's plea offer and counsel's advice, which read in part:

> Please accept this letter as confirmation that there has been a plea offer made in this case of fifteen (15) years in the Department of Corrections, followed by lifelong probation.  As you know, we have discussed the offer at length and I have advised you that taking such an offer <u>may</u> be in your best interests.  There is no way that anyone can predict what a jury will do in this case.  It is very possible that you could be convicted as charged and sentenced to life in prison without the possibility of parole.  However, after fully examining the risks involved, it is my understanding that you will not accept the plea and wish to proceed to trial.  I admire and respect you for your decision but wanted to make it clear that you understand the risks.  Therefore, we will proceed to defending this matter before the jury.

At the end of the letter, defense counsel reiterated that: "It is important that I am certain that you understand and agree with the issues raised above."  To that end, counsel asked that Stuckey sign the letter to indicate his agreement, and advised that Stuckey should not hesitate to ask any additional questions he might have about the letter's contents.  Stuckey signed the letter.

---

[1]The trial record contains references to only two plea offers, one for a 15-year sentence and one for a 12-year sentence.  At the state evidentiary hearing on Stuckey's Fla. R. Crim. P. 3.850 motion, however, Stuckey testified that he also initially received and rejected a plea offer for a 25-year sentence.

3

The second offer, made a couple of days before the start of trial, was for a 12-year prison sentence followed by lifetime probation.  On the morning of trial, prior to jury selection, Stuckey's counsel informed the state trial court that the State had made a revised plea offer of 12 years.  Defense counsel stated that he had "conferred with [Stuckey] at length about that [offer] and [Stuckey] ha[d] decided not to take that."  The state trial court confirmed that Stuckey was aware of the offers and had had enough time to discuss them with counsel.

## C.    Conviction, Resentencing, and Direct Appeal

Following a two-day trial, the jury found Stuckey guilty of both charges. The state trial court sentenced Stuckey to life imprisonment without the possibility of parole as to Count 1 and a concurrent term of 30 years' imprisonment as to Count 2.

Stuckey subsequently filed, and the state trial court granted, a Florida Rule of Criminal Procedure 3.800 motion to correct sentence because, as to Count 1, Stuckey was erroneously sentenced under the post-1995 sentencing scheme, rather than the pre-1995 sentencing scheme.  Accordingly, Stuckey was resentenced to

life imprisonment with the possibility of parole after completion of a 25-year mandatory minimum term.[2]

On direct appeal, the Florida First District Court of Appeal ("First DCA") summarily affirmed Stuckey's convictions and sentences.

## II. Rule 3.850 Proceedings

### A.    Stuckey's Rule 3.850 Motion

Stuckey, through new counsel, then filed a Fla. R. Crim. P. 3.850 motion, which he later amended.  In part, Stuckey argued (1) that trial counsel failed to adequately discuss evidence and trial strategy with him, (2) that as a result, he was unable to make informed decisions regarding the plea offers, and (3) that had he been properly advised, he would have accepted a plea.[3]

### B.    Rule 3.850 Hearing

At the evidentiary hearing, Stuckey testified that he had received three plea offers—one for a 25-year sentence, one for a 15-year sentence, and one for a 12-year sentence—all of which he had rejected.  Stuckey asserted that trial counsel "did not explain to [him] anything" about the plea offers, and that he "only rejected

---

[2]Stuckey also filed a second Rule 3.800 motion challenging his sentence on Count 2, again arguing that the trial court had not applied the correct sentencing scheme.  This motion was also granted, but ultimately resulted in the imposition of the same 30-year sentence.

[3]Although Stuckey did not argue specifically that counsel failed to properly advise him regarding the actual amount of time he would serve if he had accepted a plea, the state 3.850 court ultimately permitted Stuckey to argue that claim at the Rule 3.850 hearing and ruled on that claim in denying Stuckey's Rule 3.850 motion.

5

[them] on [his] own knowledge of what . . . [he] thought would be best." Stuckey testified that trial counsel never mentioned anything about gain time to him or how the timing of his offenses might affect his gain time. When asked whether advice about gain time "would have made a difference in whether or not [he was] willing to accept the plea offer," Stuckey replied that "based on what [he knew] about gain time now" it would have made a difference.

On cross-examination, Stuckey testified that "[t]here was really no discussion" with his trial counsel regarding the plea offers, other than counsel merely informing him of the basic terms of the offer. With regard to the 12-year plea offer, Stuckey explained that counsel "brought that up . . . . [b]ut there was no in-depth discussion about it."

At the evidentiary hearing, Stuckey's trial counsel, Sean Desmond, testified that "Mr. Stuckey maintained his innocence from the second he walked in" to Desmond's office. Desmond explained that he initially believed Stuckey was innocent, but the evidence against Stuckey, which included incriminating tape recorded conversations between Stuckey and the victim, was "very damaging." Desmond confirmed, as evidenced in part by his letter to Stuckey, that he had discussed both the 15-year and 12-year plea offers with Stuckey, and that Stuckey knew that he would be facing a life sentence if he was convicted at trial. Desmond explained that when he received the 12-year plea offer from the State, his thinking

6

was, "well, let me talk to you about this because we've got some really tough evidence here." Based on his discussions with Stuckey about the plea offers, Desmond stated that "it was evident that Mr. Stuckey was going to trial, there was just no doubt about it."

As part of his preparation for trial, Desmond hired investigator Monica Jordan, who ultimately produced a written memorandum for Desmond in connection with her work on Stuckey's case. The memo was introduced at the evidentiary hearing and, in part, described how Stuckey had refused the 12-year plea offer. The relevant portion of the memo read:

> We urged the State to make a final offer, they did so of 12 years, Mr. Stuckey refused the plea offer and wanted to proceed to trial, despite mine and Mr. Desmond's opinion that his chances of prevailing at trial were very poor.

On cross-examination, Stuckey's habeas counsel asked Desmond whether, in reviewing the plea offers with Stuckey, Desmond had discussed gain time or how much time Stuckey would actually serve if he were to take the offer. Desmond responded that he had discussed that Stuckey would serve only 85 percent, stating:

> I told him we were facing life in prison and that he would be— if he was convicted, he would go straight in, which is what happened. That if he took a plea offer from the State, he would be serving—it would be a 12-year deal, and that he would likely only serve 85 percent of that, and he would get out. The whole idea was he would get out before he was 60.

And I remember having that discussion with him at length saying if you take this, you'll be out before you're 60 years old and you'll be able to see blue skies and do all those sorts of things again. Are you sure you don't want to take that? . . .

So to answer your question yes, I would have—I don't remember, you know, specifically going through and calculating, you know, the specific dates or something like that, but the whole gist was, yeah.

When pressed about whether he had specifically mentioned the 85 percent number to Stuckey, however, Desmond equivocated, stating: "You know, I don't remember specifically saying, you know, talking about the gain time or not, honestly. I just remember telling Mr. Stuckey life, or a term of years that is going to get you out. And that's really the gist of that discussion." Desmond explained that gain time "wasn't the focus of [their] discussions" regarding the plea offers, but rather, the focus was on the fact that Stuckey was facing a life sentence if convicted at trial. Desmond further stated that Stuckey "at no time" expressed any interest in entering a plea to any term of years and "was adamant," even after he was sentenced, that he was innocent.

After both parties presented their evidence, the state 3.850 court continued the evidentiary hearing to allow the parties additional time to prepare their closing arguments. When the hearing resumed, Stuckey argued Desmond did not correctly advise him regarding the actual amount of time he could expect to serve because Desmond was under the mistaken belief that the post-1995 sentencing scheme applied, rather than the pre-1995 sentencing scheme. Stuckey contended that,

8

under the pre-1995 sentencing scheme that actually applied to him, he would have been eligible to receive more gain time, such that he would have had to serve only about 60 percent of his sentence, rather than 85 percent as Desmond had advised. In other words, had Stuckey accepted the 12-year plea offer, he would have had to serve only approximately 7.2 years of his sentence, rather than approximately 10.2 years. Stuckey asserted that, had he known of this "significantly" lower actual term, it "would have made a difference" in his decision regarding the plea offer.

## C.    State 3.850 Court's Ruling

Following the parties' closing arguments, the state court made an oral ruling on Stuckey's Rule 3.850 motion. The state 3.850 court found that "nobody sat down with a score sheet with Mr. Stuckey and said, here are the points, here is the gain time, here is the precise number of days you would serve if you took this plea today." The state 3.850 court further found that Desmond did not know that the gain time "would be closer to 60 percent, rather than 85 percent." The state 3.850 court credited Desmond's testimony that he discussed the plea offers with Stuckey, advised him that the state had a strong case, and encouraged him to accept a plea offer. The state court further found that even though the plea offer was reduced from 25 to 15 to 12 years, the fact remained that Stuckey wanted to explain himself and wanted his day in court:

> This is a case where a defendant said, I know it's gone from 25 to 15 to 12. I want my day in court. I want to explain myself. I didn't do it

9

and I'm going to make my position known.  That's what the memos reflect.  That's what Mr. Desmond testified to.  That's what the transcripts reflect.  And quite frankly, that's what happened.

Turning to Desmond's advice about the actual term Stuckey would have to serve under the 12-year plea offer, the state 3.850 court found "that at best there was an improper statement that it was 85 [percent], but there was no precise calculation."[4]  The state 3.850 court then concluded that Desmond performed deficiently in failing to properly advise Stuckey that, with gain time, "12 years meant more like seven [than] ten."  The state 3.850 court stated that there was a "huge difference" between 12 years and 7 years, and determined that although an attorney need not calculate with precision the exact amount of time a defendant would serve, a lawyer should give their client an accurate rough estimate.  The state court noted, however, that it was a particularly close call on deficient performance, given that Stuckey was facing a life sentence at trial because under those circumstances, "whether it's ten or twelve, or seven or twelve, quite frankly becomes less important."

After its finding that Desmond performed deficiently, the state 3.850 court ultimately concluded that Stuckey's gain-time claim failed because there was no

---

[4]Initially, the state court assumed that Desmond effectively told Stuckey that he would have to serve 10.2 years of the 12-year sentence, when he should have told Stuckey that he would have to serve 7.2 years.  Later, however, noting Desmond's equivocal testimony regarding what, if anything, he told Stuckey about gain time, the state court assumed that Desmond had told Stuckey nothing about what the 12-year plea offer actually meant in terms of actual time to serve.

10

reasonable possibility that the outcome would have been different had Stuckey

been advised properly. The state 3.850 court explained:

> I absolutely find that it strains—you know, it is—where somebody is facing life without possibility of parole, the notion that being told it would have been seven rather than ten years, the 85 percent—I would have gone ahead and done seven years facing life, but I wasn't willing to do ten or twelve, it's simply I find that there's no reasonable possibility, particularly in light of the memos, particularly from Monica Jordan, the letter he signed, as well as his statements on the record.
>
> Mr. Stuckey insisted on going to trial. He was not going to take a plea. And I find there's no reasonable possibility that it would have affected the outcome. . . . Under the circumstances, Mr. Stuckey didn't want to discuss a plea that was going to result in a lengthy prison sentence. He was willing to roll the dice and go to trial and face a life sentence. Again, based on the record before me, the exhibits which corroborate Mr. Desmond's testimony, I find there is no reasonable possibility that Mr. Stuckey would have accepted that plea offer had he had a more detailed discussion about gain time.
>
> And I simply think that is buyer's remorse . . . .

Accordingly, the state court denied Stuckey's Rule 3.850 motion.

Stuckey appealed, and the First DCA summarily affirmed the denial of

Stuckey's Rule 3.850 motion.[5]

## III. Section 2254 Petition

Stuckey then filed a § 2254 habeas corpus petition in the district court,

which he later amended, raising five grounds for relief. As relevant to this appeal,

---

[5]We need not decide here whether to look through to the state 3.850 court decision on the trial or the summary First DCA decision because it does not matter to the result. This avoids any complications whether the Supreme Court agrees or disagrees with our Court's decision in Wilson v. Warden, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 137 S. Ct. 1203 (2017).

Stuckey argued in Ground 1 that Desmond rendered ineffective assistance by misadvising Stuckey regarding the actual amount of time he would serve if he took the 12-year plea offer.

Stuckey's § 2254 petition asserted that, "[h]ad [Desmond] discussed the overwhelming evidence, the strategy of the case, and the fact that a plea would result in [Stuckey] being out of prison in approximately 60% of the 12 year sentence, [he] could have made knowledgeable decisions regarding the plea agreements" and would have accepted the plea offer. Stuckey contended that the state 3.850 court erred in finding his assertion that he would have accepted the plea not credible and in concluding he suffered no prejudice from Desmond's deficient performance. Stuckey maintained that the state 3.850 court should have considered his gain-time claim in the broader context of Desmond's failure to properly prepare him for trial and present a cohesive defense strategy.

A magistrate judge issued a report and recommendation ("R&R") recommending that Stuckey's § 2254 petition be denied. The district court adopted the R&R over Stuckey's objection and denied his § 2254 petition.

Regarding Stuckey's gain-time claim, the magistrate judge noted that, in finding Stuckey would not have accepted a plea offer even if he had been advised properly, the state 3.850 court specifically credited Desmond's testimony regarding Stuckey's insistence on proceeding to trial, and that testimony was corroborated by

evidence in the record.  The magistrate judge further noted that credibility determinations are the province of the state 3.850 court, and federal habeas courts lack authority to redetermine a witness's credibility.  Accordingly, Stuckey had not shown the state 3.850 court's rejection of his gain-time claim was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented at the state evidentiary hearing.

The district court granted Stuckey a COA solely on the issue of whether Stuckey was entitled to relief on the ground that Desmond rendered ineffective assistance by failing to advise Stuckey of the accurate time he would serve if he accepted the State's plea 12-year plea offer.  We address that claim below.

## IV.  DISCUSSION

### A.    Standard of Review

In examining the denial of a 28 U.S.C. § 2254 petition, "we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error."  Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11th Cir. 2007).  When a state court denies relief on a federal constitutional claim, we presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  See Harrington v. Richter, 562 U.S. 86, 99, 131 S. Ct. 770, 784-85 (2011).  "A state court's determination that a

13

claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Id. at 101, 131 S. Ct. at 786 (quotation marks omitted).

We follow a "general framework of substantial deference" when reviewing federal issues that state courts have decided. Diaz v. Sec'y, Dep't of Corrs., 402 F.3d 1136, 1141 (11th Cir. 2005). To grant a § 2254 petition, we must find not only that the petitioner's claims are meritorious, but also that the state court's judgment: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Guzman v. Sec'y, Dep't of Corrs., 663 F.3d 1336, 1345-46 (11th Cir. 2011). In other words, it is not enough to say that the state court's decision was incorrect or that we would have reached a different conclusion in the first instance. See Daniel v. Comm'r, Ala. Dep't of Corrs., 822 F.3d 1248, 1259 (11th Cir. 2016). Rather, we must find that the state court's decision was objectively unreasonable—a substantially higher threshold. Schriro v. Landrigan, 550 U.S. 465, 473, 478, 127 S. Ct. 1933, 1939, 1942 (2007).

**B.    Ineffective Assistance Standard**

Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), a

petitioner demonstrates ineffective assistance of counsel by showing that

(1) counsel's representation fell below an objective standard of reasonableness, and

(2) counsel's deficient performance prejudiced the defendant.  Nejad v. Att'y Gen.,

830 F.3d 1280, 1290 (11th Cir. 2016).  A habeas petitioner must satisfy both

prongs to demonstrate ineffective assistance of counsel.  Bishop v. Warden, 726

F.3d 1243, 1254 (11th Cir. 2013).  To establish prejudice, the petitioner must show

a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  Nejad, 830 F.3d at 1290.  "The

likelihood of a different result must be substantial, not just conceivable."

Harrington, 562 U.S. at 112, 131 S. Ct. at 792.

To show prejudice in the plea context, the petitioner must show that, but for

counsel's ineffective advice, there is a reasonable probability that: (1) he would

have accepted the plea offer; (2) the prosecution would not have withdrawn it due

to any intervening circumstances; (3) the court would have accepted its terms; and

(4) the conviction or sentence, or both, would have been less severe than that

actually imposed.  Lafler v. Cooper, 566 U.S. 156, 164, 132 S. Ct. 1376, 1385

(2012).

15

**C.    Analysis of Stuckey's Claim**

As an initial matter, despite the fact that the district court granted a COA only as to Stuckey's gain-time claim, Stuckey continues to argue on appeal that Desmond was also deficient more generally in failing to provide him an accurate view of the case as a whole, such that he was unable to make a knowing decision regarding the 12-year plea offer.  That argument is outside the limited scope of the COA, however, and we reject Stuckey's attempt to shoehorn it in by arguing that it provides the necessary context through which to view his gain-time claim.

Although Stuckey raised both his general misadvice and gain-time claims in Ground 1 of his amended § 2254 petition, both the state 3.850 court and the district court clearly treated Stuckey's gain-time claim as separate and distinct from his broader claim that Desmond failed to adequately advise him regarding the strengths and weaknesses of his case.  Likewise, in granting Stuckey a COA, the district court did not refer to Ground 1 as a whole, but rather specified that it was granting a COA only with respect to Stuckey's gain-time claim and not as to any other issue.  Furthermore, Stuckey has not moved this Court to expand the COA to include his more general misadvice claim.  Accordingly, Stuckey's gain-time claim is the only issue properly before us, and it is the only issue we address here.  See Zakrzewski v. McNeil, 573 F.3d 1210, 1211 n.2 (11th Cir. 2009) (per curiam) (declining to address arguments beyond the scope of the COA).

16

Turning to that gain-time claim, we conclude that the state 3.850 court's decision neither involved an unreasonable application of federal law, nor was it based on an unreasonable determination of fact. See 28 U.S.C. § 2254(d). In rejecting Stuckey's claim, the state 3.850 court properly considered Stuckey's ineffective-assistance claim according to Strickland's requirements and determined that although counsel's advice regarding gain time was deficient, Stuckey ultimately suffered no prejudice.

Regarding prejudice, the state 3.850 court correctly noted that in the plea context, Stuckey was required to show that but for counsel's misadvice regarding gain time, he would have accepted the 12-year plea offer instead of proceeding to trial. Lafler, 566 U.S. at 164, 132 S. Ct. at 1385. In concluding that Stuckey had not established a reasonable probability that he would have accepted the plea offer, the state court considered the full evidentiary record, including Stuckey's and defense counsel Desmond's testimony, the trial transcript, Desmond's letter to Stuckey, and the memorandum from investigator Jordan. Although Stuckey also testified that he would have accepted the plea offer had he known that gain time meant he would serve only 7.2 years of the 12-year sentence, the record indicated that Stuckey was not interested in accepting any plea.

Stuckey himself testified that he had received and rejected three plea offers, each of which was more favorable than the last, before going to trial, suggesting

17

that he was determined to proceed to trial.  Similarly, defense counsel Desmond testified that Stuckey never expressed any interest to him in accepting any plea offer and that Stuckey insisted on going to trial even after Desmond advised him that it was "very possible" that he would be convicted at trial and sentenced to life imprisonment.  Desmond further testified that from the very beginning of his representation of Stuckey through the end of the trial, Stuckey was adamant that he was innocent.  The state 3.850 court credited Desmond's testimony, and it is not our place to second-guess the state court's credibility determination.  See Consalvo v. Sec'y, Dep't of Corrs., 664 F.3d 842, 845 (11th Cir. 2011).  Furthermore, Desmond's testimony was corroborated by evidence in the record, including his letter to Stuckey regarding the 15-year plea offer and investigator Jordan's memorandum to Desmond about the 12-year plea offer.  Both documents were drafted at or near the time of trial, providing contemporaneous evidence regarding Stuckey's unwillingness to accept a plea.

In sum, the state 3.850 court's determination that, even properly advised about gain time, Stuckey likely would still have rejected the 12-year plea offer and insisted on proceeding to trial was not an unreasonable determination of the facts in light of the evidence presented in the Rule 3.850 proceeding.  See 28 U.S.C. § 2254(d)(2).  Nothing in the record indicated that Stuckey ever waivered in his resolve to have his day in court or in his insistence that he was innocent.  Stuckey's

18

present "buyer's remorse" at having declined what turned out to be a highly favorable plea offer in comparison to the sentence he received is insufficient to show that he actually would have accepted the 12-year plea offer had Desmond correctly advised him about gain time. See Osley v. United States, 751 F.3d 1214, 1223-25 (11th Cir. 2014) (concluding, in a § 2255 case, that the defendant failed to show he would have accepted a plea given his rejection of other plea offers and protestations of innocence). Likewise, the state court's resulting conclusion that Stuckey could not demonstrate prejudice from Desmond's failure to advise him about gain time was not an unreasonable application of Strickland. See id. § 2254(d)(1); Lafler, 566 U.S. at 164, 132 S. Ct. at 1385. Accordingly, we affirm the district court's denial of Stuckey's § 2254 habeas corpus petition.

**AFFIRMED.**