[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12789
Non-Argument Calendar

_____

D.C. Docket No. 5:16-cv-00587-RBD-PRL

DAVID DUNHAM,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 25, 2020)

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

David Dunham ("Dunham"), a Florida prisoner, appeals from the district court's denial of his 28 U.S.C. § 2254 petition. We granted a certificate of appealability ("COA") on one issue: whether Dunham's counsel rendered constitutionally ineffective assistance by advising Dunham to enter a *nolo contendere* plea without making Dunham fully aware of the potential maximum sentence he could receive. For the reasons stated below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Dunham was charged with twenty counts of second- and third-degree possession of child pornography. Dunham agreed to enter a no contest plea to all twenty counts and signed a "Petition to Enter Plea of Guilty/*Nolo Contendere*" (the "Petition to Enter Plea") on February 25, 2013. In the Petition to Enter Plea, Dunham agreed that his trial counsel, George Mason, had discussed his case with him and that Dunham was "fully satisfied with [his] attorney's representation" in the case. Dunham also acknowledged that: (1) he was advised that the statutory maximum possible sentence for the charges was 240 years; (2) if Mason told Dunham he might receive a light sentence, that was "merely [Mason's] opinion or estimate and [was] not binding on the Judge"; and (3) Mason did not make any promise, directly or indirectly, to Dunham.

At Dunham's plea colloquy, Mason stated that Dunham was entering an open no contest plea. After placing Dunham under oath, the state trial court advised

2

Dunham that he was charged with a total of twenty counts that each carried a maximum sentence of fifteen years of imprisonment. Mason stated that Dunham understood the maximum sentence was 240 years, and Dunham confirmed that he understood the penalties. Dunham stated that he was satisfied with Mason's work, that they had "spent a lot of time" discussing the case, and that no one had promised him anything in exchange for his plea. Dunham then pleaded no contest to the twenty counts, confirming that he understood the rights he was waiving and the maximum penalties on the charges he faced.

On September 30, 2013, Dunham was sentenced to 180 months of imprisonment on the second-degree convictions and to a consecutive 25.8 months on the third-degree convictions, for a total of 205.8 months of imprisonment. On October 8, 2013, Dunham filed a motion to withdraw the plea. In this motion, Dunham claimed that Mason had failed to file a motion for downward departure, that Dunham had "entered an open plea based upon the representations of trial counsel . . . that [he] could receive a substantially lesser sentence than that plea offer made by the Office of the State," and that Mason's "representations regarding the potential discretion of the trial court forced [Dunham] to enter an open plea . . . and made the plea involuntary." The state trial court denied this motion. Dunham subsequently filed a motion to modify his sentence, which was denied. Dunham appealed, and the Florida Fifth District Court of Appeal dismissed his appeal as

3

untimely but without prejudice for Dunham to seek a belated appeal. Dunham, however, never sought a belated appeal.

On May 15, 2014, Dunham filed a state postconviction motion, arguing, in relevant part, that his plea was involuntary because he did not understand the consequences of his plea, that he was misled by Mason to believe that he would receive a sentence of two years of community control if he entered the plea, and that he would not have pleaded but for Mason's misrepresentations. The state postconviction court held an evidentiary hearing on Dunham's motion, at which Dunham and Mason both testified. At the hearing, Dunham testified that it was his intent to go to trial to prove his innocence but that he decided to enter a plea during a conversation he had with Mason the day of the plea hearing. Dunham testified that Mason told him that Mason was not prepared to go to trial and that he would get Dunham a sentence of two years of house arrest if Dunham pleaded no contest to all of the charges. Dunham further testified that he understood that there was a risk he could go to prison but did not understand that he could receive a 205.8-month sentence. Dunham also testified that he understood the penalties he faced by pleading but claimed that he initialed the Petition to Enter Plea with the understanding that the document was simply a formality, as Mason did not go over the petition form in detail with him.

4

In contrast, Mason testified that he never promised Dunham a sentence of two years of community control or house arrest if Dunham pleaded no contest.  Rather, Mason testified that he and Dunham had an "aspirational" goal that Dunham "would have substantial mitigation to present" at sentencing relating to his health, age, and lack of criminal history.  Mason further testified that he discussed the consequences of entering the plea and the range of possible sentences with Dunham, including the fact that the judge could deviate below the guidelines if they provided mitigation. Mason also testified that he went over the Petition to Enter Plea on multiple occasions with Dunham and that Dunham did not want to go trial, as Dunham believed it was in his best interest to enter a plea and hope for mercy from the court due to mitigation.  Finally, Mason testified that the decision to enter a plea was made months before the plea hearing and that if Dunham had not wanted to enter a plea, Mason would have represented him at trial.

On July 14, 2015, the state postconviction court denied Dunham's motion.  As to Dunham's plea-related claim, the state postconviction court, after reviewing the record evidence and testimony from the evidentiary hearing, found the claim to be without merit.  The state postconviction court noted that portions of Dunham's testimony were in direct conflict with Mason's testimony and found, based on its observations, that Mason was more credible than Dunham.  As such, the court "resolve[d] any conflicts in testimony in favor of Mr. Mason being the more credible

5

witness." Dunham subsequently appealed the state postconviction court's denial of his motion, which the Florida Fifth District Court of Appeal affirmed without a written opinion.

On September 9, 2016, Dunham filed a *pro se* § 2254 petition that raised five grounds for relief, including the claim that Mason failed to effectively represent him by misadvising Dunham about the consequences of his plea and that, as a result, his plea was involuntarily entered. As to this claim, Dunham asserted that Mason advised him that a no contest plea would only result in two years of house arrest and further asserted that he would not have entered the plea if he had known that he would not receive a house arrest sentence. Dunham alleged that he had wanted to go to trial but Mason informed him that Mason was not ready for trial and that, as a result, Dunham felt he had no choice but to take a plea. Dunham admitted that he and Mason had discussed the minimum and maximum sentences he could face under the sentencing guidelines but claimed that Mason told him the trial court could go below the guidelines' range of possible sentences.

The district court denied Dunham's petition. The district court explained that sworn statements on the record were presumed to be true and noted that Dunham had sworn in his plea colloquy that he understood the maximum sentence he could receive and that he had received no promises in exchange for his plea. Reviewing the state court's ruling regarding the plea-related claim, the district court found the

6

state court's decision to be reasonable "in accord with, and not contrary to," *Strickland v. Washington*, 466 U.S. 668 (1984), and that it was not "unreasonable[] in light of the evidence presented in the state court proceedings."

This Court subsequently granted Dunham a COA on the issue of whether Mason rendered constitutionally ineffective assistance of counsel by advising Dunham to enter a *nolo contendere* plea without making Dunham fully aware of the potential severity of the sentence Dunham could receive for his convictions. This appeal ensued.

## II.    STANDARD OF REVIEW

We review *de novo* the district court's denial of a habeas corpus petition. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005). Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), after a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Therefore, "[w]e review *de novo* the district court's decision about whether the state court acted contrary to clearly established federal law, unreasonably applied federal law, or made an unreasonable determination of fact." *Reed v. Sec'y*, *Fla. Dep't of*

*Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010) (quoting *Smith v. Sec'y, Dept' of Corr.*, 572 F.3d 1327, 1332 (11th Cir. 2009)).

While we review the district court's decision *de novo*, we "owe deference to the final state habeas judgment." *Id.* (quoting *Peterka v. McNeil*, 532 F.3d 1199, 1200 (11th Cir. 2008)). Indeed, pursuant to AEDPA, there is a "highly deferential standard for evaluating state-court rulings," *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)), which "demands that state-court decisions be given the benefit of the doubt," *id.* (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Reed*, 593 F.3d at 1239. The "unreasonable application" inquiry requires that the state court decision "be more than incorrect or erroneous"—it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). A petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Additionally, a state court's factual determinations are entitled to a presumption of correctness, and the applicant has the burden of rebutting the

8

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *accord Nejad v. Att'y Gen., Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016).

## III.   ANALYSIS

On appeal, Dunham argues that the district court erred in denying his claim that Mason was ineffective for advising him to enter a *nolo contendere* plea without making him aware of the potential severity of his sentence. Dunham further argues that the record shows that, but for Mason's deficiency, Dunham would have proceeded to trial rather than enter the plea. As such, Dunham claims that his plea was not knowing and voluntary and that he should be entitled to have his plea withdrawn.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his or her counsel's performance was deficient, i.e., the performance "fell below an objective standard of reasonableness"; and (2) he or she suffered prejudice as a result of that deficiency. *Id.* at 687–88. To establish deficient performance, the defendant must show that, "in light of all the circumstances," counsel's "identified actions or omissions were outside the wide range of professionally competent assistance." *Id.*

at 690. "There is a strong presumption that trial counsel's conduct is the result of trial strategy." *Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir. 1987).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The two-part *Strickland* test also applies to challenges to pleas based on ineffective assistance of counsel, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and to show prejudice in a challenge to a plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded . . . and would have insisted on going to trial." *Id.* at 59.

A habeas petitioner must carry his burden on both *Strickland* prongs to demonstrate ineffective assistance of counsel. *Bishop v. Warden*, *GDCP*, 726 F.3d 1243, 1254 (11th Cir. 2013). "[A] court need not address both prongs if the petitioner has made an insufficient showing on one of them." *Id.* (quoting *Strickland*, 466 U.S. at 697).

Moreover, when the deferential standard of *Strickland* is combined with the deferential standard of AEDPA as to the matter of performance, the result is a doubly

deferential standard of review in federal court.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  "[T]he question is not whether counsel's actions were reasonable," but rather, "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *accord Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  As we have previously explained, "[i]t was meant to be, and is, difficult for a petitioner to prevail under that stringent standard."  *Nance v. Warden*, *Ga. Diagnostic Prison*, 922 F.3d 1298, 1301 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2520 (2020).

To support his argument that Mason rendered ineffective assistance of counsel, Dunham points to his testimony from the state postconviction evidentiary hearing that Mason never informed him that he could receive a maximum sentence of 240 years and that Dunham pleaded because Mason told him that he could receive a sentence of two years of house arrest.  This argument is without merit.

Here, we "look through" the Florida Fifth District Court of Appeal's summary affirmance to the state postconviction court's order, which was the last reasoned adjudication on the merits of Dunham's claim.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits should "look through" that decision to "the last related state-court decision" that provides a relevant rationale and "then presume that the unexplained decision adopted the same reasoning").  In denying Dunham's plea-

11

related claim, the state postconviction court reviewed the record and found that Dunham understood his maximum sentence and the rights he was giving up when entering the plea. Indeed, the transcript of the plea colloquy shows that Dunham stated, under oath, that he understood the maximum sentence he could receive was 240 years in prison. A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Dunham also acknowledged the maximum sentence he could receive in the Petition to Enter Plea, which he signed.

Furthermore, the state postconviction court determined that Mason's testimony was more credible than Dunham's testimony and resolved all conflicts in favor of Mason. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Thus, "[f]ederal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). When a state court is "presented with squarely conflicting testimony on [a] critical factual dispute," we are "powerless to revisit [the state court's credibility determination] on federal habeas review" absent "clear and convincing evidence in the record to rebut this credibility judgment." *See Nejad*, 830 F.3d at 1292.

12

At the evidentiary hearing, Mason testified that he never told Dunham that he would only receive two years of house arrest if he entered a plea, but instead that their strategy was to present "substantial mitigation" at sentencing for Dunham to receive a lower sentence. Mason also testified that he discussed the consequences of entering the plea and the range of possible sentences with Dunham, that he went over the Petition to Enter Plea multiple times with Dunham, and that the decision to enter a plea was made months before the plea hearing. While Dunham presented conflicting testimony, the state postconviction court was entitled to make a credibility determination in favor of Mason to resolve the conflicting testimony. The state postconviction court's factual findings, including its credibility determinations, are entitled to a presumption of correctness, and Dunham has not presented clear and convincing evidence to rebut this presumption. *See id.* at 1289.

Indeed, the state postconviction court's factual findings are not an "unreasonable determination of the facts in light of the evidence presented" in the state court proceedings. *See* 28 U.S.C. § 2254(d). Because Mason advised Dunham on the possible range of sentences that the court could impose if he entered a plea—including the maximum sentence of 240 years—and because Dunham testified under oath at the plea colloquy that he was aware of the possible maximum sentence, there is a reasonable argument that Mason satisfied *Strickland*'s deferential standard regarding whether Mason's representation of Dunham fell within the wide range of

13

professional competence. *See Harrington*, 562 U.S. at 105. We therefore find that the state postconviction court's denial of Dunham's plea-related claim was not contrary to or an unreasonable application of *Strickland*.

Accordingly, we affirm the district court's order denying Dunham's habeas petition.

**AFFIRMED.**